IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **RAFAEL GONZALEZ,** | CASE NO. 3:25 CV 1764 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **PROVIDER MS. HACKER, et al.,** | **MEMORANDUM OPINION** |
| Defendants. | **AND ORDER** |

### INTRODUCTION

*Pro se* Plaintiff Rafael Gonzalez, a federal prisoner currently incarcerated under an intergovernmental agreement at Toledo Correctional Institution ("ToCI"), has filed a fee-paid civil rights Complaint against the Medical Supervisor at the Correctional Reception Center ("Ms. Campbell"); the Hospital Administrator at ToCI ("Ms. Hayse"); and ToCI medical provider "Ms. Hacker". (Docs. 1, 9). Plaintiff seeks reinstatement of his previous medications and medical treatment plan, a declaration that Defendants failed to provide proper medical care, and monetary relief. *See* Doc. 1, at 7.

### BACKGROUND

According to the Complaint, Plaintiff arrived at the Correctional Reception Center from USP Big Sandy on March 11, 2025, with a medical file including medical records, documented treatments, medications, and a medical duty slip. *Id.* at 4. Plaintiff states he previously received Gabapentin twice daily for chronic nerve damage, steroid injections every three months for a right shoulder injury, omeprazole for a stomach ailment, a medical duty slip noting injury limitations,

and a shoulder cuff. *Id.* at 6. He claims that upon arriving at the Correctional Reception Center, his medications were discarded. *Id.* Plaintiff advised the examining physician of his prior injuries and treatment plan but she told him he would not receive any of his prior medications or duty slip accommodations. *Id.*

According to Plaintiff, during the week of March 13, 2025, he spoke with Ms. Campbell regarding his medical needs, and she confirmed that no treatment would be provided and "her word was final." *Id.*

On March 30, 2025, Plaintiff received a medical examination for his shoulder. Plaintiff claims that instead of receiving Gabapentin, he received Depakote, a purported seizure medication, which caused side effects and provided no relief. Plaintiff states "the provider" told him: "this ain't Kentucky." *Id.*

On April 3, 2025, Plaintiff was transferred to ToCI. *Id.* The following day, Plaintiff saw a prison physician who ordered labs and x-rays, and told Plaintiff he would be seen again soon. *Id.*

Over the next several months, Plaintiff had multiple visits with Ms. Hacker and Ms. Hayse. *Id.* Plaintiff states he provided Ms. Hacker with his prior medical records confirming spinal nerve damage. *Id.* Plaintiff states he was denied a specialist and an MRI for his spine, and his treatment was limited to Tylenol. *Id.*

During a sick call for back pain and numbness in his feet on May 19, 2025, the examining nurse told Plaintiff, "There's nothing we can do for you. You [have] already been told that. If you don't like it, write [to] Columbus." *Id.*

On July 10, 2025, Plaintiff was prescribed a six-day course of Prednisone, but received no further treatment for his nerve damage and shoulder pain. *Id.*

On August 5, 2025, Plaintiff was examined by Ms. Hacker and "an outside consult, Dr. Biggler." *Id.* at 6, 5.[1] During this examination, Dr. Biggler asked to review Plaintiff's 2018 MRI and Ms. Hacker reported that it was "somewhere in the file" and she would share it with the doctor. *Id.* at 5. Plaintiff claims that by the end of the visit, Ms. Hacker had not shown Dr. Biggler the MRI and he never saw it. *Id*. Plaintiff claims Ms. Hacker told him that "she was running out of options on medicine," yet Plaintiff reported he had not received any treatment for his nerve damage. *Id.* at 5.

In a supplement to the Complaint, Plaintiff states that upon arriving at ToCI, his hearing aid was broken. (Doc. 9, at 3). He claims he was advised for three months that he was on a list to see a specialist to obtain another hearing aid. *Id.* Plaintiff asserts that "after 3 months of misleading information," the medical provider "asked to request [Plaintiff's] record." Plaintiff states he obtained his prior medical records that included a hearing test himself. *Id.* at 3-4.

Plaintiff claims that during his incarceration at the Correctional Reception Center and at ToCI he received inadequate medical care, treatment, and medications for his spine damage and shoulder condition. He alleges Defendants' actions denied him adequate medical care in violation of his rights under the Eighth and Thirteenth Amendments. *See* Doc. 1, at 3.

### STANDARD OF REVIEW

Plaintiff's status as a prisoner requires the Court screen the Complaint under 28 U.S.C. § 1915A regardless of whether the filing fee was paid. *See Lacoss v. Engler*, 234 F.3d 1268, 1268 (table) (6th Cir. 2000) ("[A]ll complaints filed by prisoners against state officials, whether or not they are proceeding *in forma pauperis*, are subject to *sua sponte* dismissal for failure to state a

---

[1]. The pages of Plaintiff's Complaint appear to have been scanned out of order with Document 1, page 5 being a continuation of Document 1, page 6. *See* Doc. 1, at 5-6.

3

claim.") (citing 28 U.S.C. § 1915A; *Benson v. O'Brian*, 179 F.3d 1014, 1016 (6th Cir. 1999)); *Siller v. Dean*, 205 F.3d 1341, 1341 (table) (6th Cir. 2000) (finding the district court improperly dismissed fee-paid prisoner civil rights case pursuant to § 1915(e)(2)(B), but affirming the district court's judgment because the complaint was properly subject to dismissal pursuant to § 1915A) (citations omitted).

A district court is expressly authorized to dismiss any civil action filed by a prisoner seeking relief from a governmental entity, or officer or employee of a governmental entity, as soon as possible after docketing, if the Court concludes that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or if the complaint seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010).

A frivolous case "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim on which relief may be granted when it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hill*, 630 F.3d at 470-71 (holding the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), governs dismissals for failure to state a claim under § 1915A).

When reviewing a complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998) (citing *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996)). The courts, however, are not required to "conjure up unpleaded facts" or construct claims against defendants on behalf of a *pro se* plaintiff. *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citation omitted); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277-78 (4th Cir. 1985).

**DISCUSSION**

Upon review, Court finds the Complaint warrants summary dismissal under 28 U.S.C. § 1915A.

As an initial matter, Plaintiff fails to state a plausible Thirteenth Amendment claim upon which relief may be granted. The Thirteenth Amendment prohibits "slavery [or] involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted." U.S. Const. amend. XIII, § 1. Involuntary servitude exists only when the victim is forced to work for the defendant by: (1) threatened or actual physical force; (2) threatened or actual state-imposed legal coercion; or (3) fraud or deceit where the servant is a minor or an immigrant or is mentally incompetent. *United States v. Kozminski*, 487 U.S. 931, 932 (1988) (syllabus); *Rhoades v. Hameed*, 2009 WL 10720170, at *4 (N.D. Ohio). Plaintiff's Complaint contains no allegations of involuntary servitude. Therefore, any purported claims of a violation of the Thirteenth Amendment are dismissed.

Additionally, Plaintiff fails to state a plausible Eighth Amendment claim upon which relief may be granted.

The Eighth Amendment prohibits prison officials from acting with "deliberate indifference" toward an inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Horn ex rel. Parks v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994) ("Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment.") (citation omitted). A prisoner must therefore demonstrate that (1) his medical condition posed a "substantial risk of serious harm" to him, and (2) each defendant in

question acted with subjective deliberate indifference to that risk. *See Farmer v. Brennan*, 511 U.S. 825, 828-30 (1994).

The objective element requires the existence of a "sufficiently serious" medical need. *Id.* at 834. A sufficiently serious medical need has been defined as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation omitted).

The subjective element requires "an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). To establish the requisite culpability, a prisoner must demonstrate that the prison official(s) "(1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010).

An "inadvertent failure to provide adequate medical care" is not "repugnant to the conscience of mankind" and is therefore insufficient to state a claim of deliberate indifference. *Estelle*, 429 U.S. at 105-06. And allegations of medical malpractice or negligent diagnosis and treatment are insufficient to state a claim. *Jennings v. Al-Dabagh*, 97 F. App'x 548, 549-50 (6th Cir. 2004); *Mitchell v. Hininger*, 553 F. App'x 602, 604 (6th Cir. 2014) ("Deliberate indifference requires more than mere negligence, more even than medical malpractice."). Likewise, a prisoner's disagreement with the treatment received is insufficient to rise to the level of an Eighth Amendment violation. *Dodson v. Wilkinson*, 304 F. App'x 434, 440 (6th Cir. 2008); *Mitchell*, 553

F. App'x at 605 (stating a prisoner's "desire for additional or different treatment does not suffice" to make out a claim).

In evaluating a deliberate indifference claim concerning medical care or treatment, courts distinguish between cases in which the complaint alleges a complete denial of medical care and those cases in which a prisoner claims he received inadequate medical treatment. *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). When a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). It is possible, however, for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Mitchell*, 553 F. App'x at 604 (quoting *Alspaugh*, 643 F.3d at 169).

Under this standard, Plaintiff cannot establish deliberate indifference. According to the Complaint, Plaintiff was repeatedly examined by medical providers in each location, lab tests and x-rays were ordered, and Plaintiff was provided some medication, including Depakote, Prednisone, and Tylenol. Additionally, he was examined "for chronic care" by an "outside consult, Dr. Biggler" at ToCI, and he was placed on a list to see a specialist for another hearing aid.

Although Plaintiff appears to believe he should have been receiving medications he previously received while incarcerated at USP Big Sandy, such as Gabapentin and steroid injections, and contends more should have been done for him upon his transfer, his allegations do not support a plausible inference that the attention he received was "so woefully inadequate as to amount to no treatment at all." *Mitchell*, 553 F. App'x at 604. Rather, Plaintiff's claims, at best, amount to a difference of opinion between him and the prison health care providers and a dispute over the adequacy of his treatment. Such claims do not constitute an Eighth Amendment violation. *See Dodson*, 304 F. App'x at 440. At worst, these claims constitute negligence or medical

7

malpractice, and consequently, they do not establish deliberate indifference. *See Mitchell*, 553 F. App'x at 604; *see also Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) ("[W]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation.") (citation omitted).

Plaintiff has therefore failed to allege a plausible Eighth Amendment deliberate indifference claim concerning the medical treatment provided.

### CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff's action is dismissed pursuant to 28 U.S.C. § 1915A; and

FURTHER, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: November 25, 2025